**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

MINOR I. DOE, through parent PARENT I. DOE; MINOR II. DOE, through parent PARENT II. DOE;

Plaintiffs,

No.: 3:08-cv-361

v.

SCHOOL BOARD FOR SANTA ROSA COUNTY, FLORIDA; JOHN ROGERS, in his official capacity as Superintendent of the School District of Santa Rosa County, Florida; H. FRANK LAY, in his official capacity as Principal of Pace High School;

Defendants.

_______________________________________/

# COMPLAINT

COME NOW Plaintiffs MINOR I. DOE ("Doe 1"), through parent PARENT I. DOE, and MINOR II. DOE ("Doe 2"), through parent PARENT II. DOE, both by and through the undersigned counsel, and sue Defendants SCHOOL BOARD FOR SANTA ROSA COUNTY, FLORIDA, ("School Board"); JOHN ROGERS, in his official capacity as Superintendent of the

DOE et al v. SCHOOL BOARD FOR SANTA ROSA COUNTY, FLORIDA et al Doc. 1

Dockets.Justia.com

School District of Santa Rosa County, Florida; and H. FRANK LAY, in his official capacity as Principal of Pace High School, and allege as follows:

## INTRODUCTION

1. "Religious beliefs and religious expression are too precious to be either proscribed or prescribed by the State."[1] However, school officials have used their government positions throughout the School District of Santa Rosa County, Florida, ("School District") to persistently and pervasively promote their personal religious beliefs in the public schools and at school events. School district officials have (1) sponsored prayer at myriad school events, including graduation; (2) orchestrated religious baccalaureate services; (3) held school-sponsored events at places of worship, even when suitable School District facilities existed; and (4) proselytized students or permitted outsiders to do so and otherwise promoted their personal religious beliefs during classes and other school-sponsored events and activities. These practices are prevalent at Pace High School, where students not only face overt compulsion to adopt the religious beliefs

---

[1] *Lee v. Weisman*, 505 U.S. 577, 589 (1992).

of school officials, but also must contend with subtle coercive pressures to conform their religious beliefs to those favored by school officials.

2. Government-sponsored prayer, proselytizing, and religious ceremonies such as these are unconstitutional. The first clause in the First Amendment to the Federal Constitution provides that "Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof." The Fourteenth Amendment imposes these substantive limitations on the States and their political subdivisions, including the School Board, and state actors, such as school principals and superintendents. Religious freedom is alive and well in the United States precisely because the government—and, in particular, public schools—must remain neutral on questions of faith.

3. Plaintiffs, who are students at Pace High School in Pace, Florida, are subjected to school officials' unyielding endorsements of religion and coercive religious practices. Plaintiffs thus bring this Establishment Clause lawsuit to challenge the policies, practices, and customs promoting religion throughout the School District. Plaintiffs seek a declaratory judgment that the Defendants' policies, practices, and customs

are unconstitutional because they (1) are religiously coercive; (2) endorse and promote religion; and (3) have the purpose or effect of advancing religion. Plaintiffs also seek a permanent injunction forbidding the School Board, the Superintendent, Pace High School Principal, and other School District officials from (1) sponsoring, facilitating, or promoting prayer at school events, including graduation; (2) organizing, promoting, or otherwise supporting religious baccalaureate services; (3) holding school-sponsored activities at places of worship when appropriate secular venues are available; (4) permitting school officials and others to proselytize students; and (5) otherwise unconstitutionally endorsing or coercing religion. Plaintiffs further seek nominal damages, attorneys' fees, and expenses.

## JURISDICTION AND VENUE

4. Plaintiffs bring this action pursuant 42 U.S.C. §1983 for violations of civil rights under the First and Fourteenth Amendments to the United States Constitution.

5. This Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. §1331 (federal question) and 28 U.S.C. §1343(a)(3) (civil rights). This Court has subject-matter jurisdiction over the pendent state

constitutional law claims pursuant to 28 U.S.C. §1367 (supplemental jurisdiction).

6. Venue is proper in this judicial district and division pursuant to 28 U.S.C. §1391(b) and N.D. Fla. Loc. R. 3.1. Defendants School Board, Rogers, and Lay, on information and belief, reside in this district and division and the unlawful practices that give rise to the claims herein occurred within this district and division.

## PARTIES

7. **Plaintiff Minor I. Doe ("Doe 1")** is a student enrolled at Pace High School in the School District of Santa Rosa County, Florida. Doe 1 has attended in the past and plans to attend in the future a number of school functions within the School District and at Pace High, including Doe 1's graduation ceremony. As a student at Pace High, Doe 1 remains subject to the policies, practices, and customs of the School Board, Rogers, and Lay.

8. As is commonly the case in Establishment Clause cases involving minor children in this judicial Circuit and throughout the country, Doe 1 is proceeding under a pseudonym. Doe 1 may be at risk not just of social ostracism, economic injury, and governmental retaliation, but also of

potential physical harm. Doe 1 fears that Doe 1 will be subject to these harms for bringing this action if Doe 1's identity is disclosed. "Minor I. Doe" is a pseudonym for the student's true identity.

9. Doe 1 is under the age of eighteen. Doe 1 sues pursuant to Federal Rule of Civil Procedure 17(c) by and through Doe 1's next friend and parent, Parent I. Doe.

10. As a student in the School District and at Pace High School, Doe 1 has regularly been subjected to the District's policies, practices, and customs promoting religion. Doe 1 has attended a number of school-sponsored events during which prayer was offered, including Pace High School's 2006, 2007, and 2008 graduation ceremonies.

11. Doe 1 objects to and is offended by the Defendants' policies, practices, and customs of supporting prayers at school events and other unconstitutional endorsements of religion because they promote religious beliefs to which Doe 1 does not subscribe and thereby fail to respect Doe 1's and others' religious choices and beliefs. Defendants' policies, practices, and customs impose on Doe 1 and Doe 1's classmates subtle coercive pressures to suppress their personal religious beliefs and to adopt school

officials' favored religious beliefs or risk incurring the disfavor of school officials, who exert considerable authority over students' everyday lives and futures. Doe 1 believes that the District's policies, practices, and customs of sponsoring prayer at school activities and events, including graduation, and holding school-sponsored events at private places of worship are particularly coercive because they impermissibly exact, as the price of attending school events and activities, students' religious conformity by forcing Doe 1 to make an untenable choice: *either* forgo attending school activities, including high-school graduation (a once-in-a-lifetime event) to avoid compelled participation in prayer and unwanted exposure to religious iconography, *or* attend such activities and conform to the religious dictates of the School District. Doe 1 asserts that the School District's policies, practices, and customs promoting religion District-wide, and as applied at Pace High School, demean Doe 1's religious freedoms, and reflect a disregard for the necessary boundary in a pluralistic society between state power and personal, religious convictions.

12. **Plaintiff Minor II. Doe ("Doe 2")** is a student enrolled at Pace High School. Doe 2 has attended in the past and plans to attend in the future a number of school functions within the School District and at Pace High,

including Doe 2's graduation ceremony. As a student at Pace High, Doe 2 remains subject to the policies, practices, and customs of the School Board, Rogers, and Lay.

13. As is commonly the case in Establishment Clause cases involving minor children in this judicial Circuit and throughout the country, Doe 2 is proceeding under a pseudonym. Doe 2 may be at risk not just of social ostracism, economic injury, and governmental retaliation, but also of potential physical harm. Doe 2 fears that Doe 2 will be subject to these harms for bringing this action if Doe 2's identity is disclosed. "Minor II. Doe" is a pseudonym for the student's true identity.

14. Doe 2 is under the age of eighteen. Doe 2 sues pursuant to Federal Rule of Civil Procedure 17(c) by and through Doe 2's next friend and parent, Parent II. Doe.

15. As a student in the School District and at Pace High School, Doe 2 has regularly been subjected to the District's policies, practices, and customs promoting religion.

16. Doe 2 objects to and is offended by the Defendants' policies, practices, and customs of supporting prayers at school events and other

unconstitutional endorsements of religion because they promote religious beliefs to which Doe 2 does not subscribe and thereby fail to respect Doe 2's and others' religious choices and beliefs. Defendants' policies, practices, and customs impose on Doe 2 and Doe 2's classmates subtle coercive pressures to suppress their personal religious beliefs and to adopt school officials' favored religious beliefs or risk incurring the disfavor of school officials, who exert considerable authority over students' everyday lives and futures. Indeed, school officials have treated (and continue to treat) Doe 2 negatively because of Doe 2's non-conformity with school officials' professed religious beliefs. Doe 2 asserts that the School District's policies, practices, and customs promoting religion district-wide, and as applied at Pace High School, demean Doe 2's religious freedoms, and reflect a disregard for the necessary boundary in a pluralistic society between state power and personal, religious convictions.

17. **Defendant School Board of Santa Rosa County, Florida**, pursuant to the Florida K-20 Education Code, is the governing body of the School District of Santa Rosa County, Florida, which controls, operates, and supervises all District schools, including Pace High School. Defendant School Board resides in Santa Rosa County, Florida. The School Board, as

a political subdivision of the State of Florida, is a state actor. The School Board is subject to civil lawsuits pursuant to Florida Statutes Section 1001.41(4).

18. **Defendant John Rogers** is superintendent of the School District of Santa Rosa County. Pursuant to Florida Statutes Sections 1001.32(3), 1001.49, and 1001.51 and the School Board's Policy Section 3.20, Rogers is vested with the authority to conduct general oversight over the School District, to recommend and execute policies and rules pertaining to the District's operation, to enforce all policies and rules of the School Board, and to carry out any other responsibilities delegated to him by the School Board. Rogers, as a School District official, is a state actor and is sued in his official capacity. As superintendent of the School District, Rogers is responsible for the unconstitutional practices and customs promoting religion and the constitutional violations resulting from their application at Pace High School.

19. **Defendant H. Frank Lay** is the principal of Pace High School. Lay is vested with the authority to discipline students at Pace High at his discretion and to enforce the policies of Pace High and the School Board.

The School Board, through Rogers, supervises Lay as principal of Pace High. Lay, as a School District official, is a state actor and is sued in his official capacity. As principal of Pace High, Lay is responsible for the constitutional violations that have occurred in connection with Pace High.

20. Defendants School Board, Rogers, and Lay, at all times relevant hereto, were acting and continue to act under color of law.

## GENERAL ALLEGATIONS

21. Throughout the School District, school officials have persistently and pervasively used their official positions to promote their religious beliefs. Specifically, over the past decade, school officials have cultivated well-established policies, practices, and customs authorizing, sponsoring, or supporting (1) prayer at school events, led by invited clergy, school officials, or students; (2) school-sponsored baccalaureate services; (3) the conduct of school events at places of worship; and (4) school officials' promotion of their personal religious views and proselytizing of students in class and during extracurricular activities.

22. Students, such as the Plaintiffs, are a captive audience for school officials' religious displays and activities, and therefore, are subjected to unconstitutional religious coercion.

## A. <u>Prayer at School Events</u>

23. In accordance with District-wide policy, practice, and custom, school officials frequently sponsor or approve prayer during various school events and activities, including graduations, award programs, and induction ceremonies. These school events have been held at numerous schools and at various grade levels. For example, school officials have advanced religion at the following high school graduations as set forth *infra* in paragraphs 24 through 30.

24. Central High School's 2005, 2006, and 2008 graduation ceremonies each featured opening prayers (identified in the printed programs as "Invocation") led by the then-president of the Fellowship of Christian Athletes, a religious, student club. Attendees were asked to stand during the invocations. *See* Ex. 1-2, pp. 1-5, attached as a composite exhibit.[2]

[2] Exhibit numbering begins at 1-2 (Doc.–Attachment) to correlate with the CM/ECF automatic numbering, which assigns the first exhibit to Doc. 1 (Complaint) the document number of 1-2 (Doc. 1-2).

25. Jay High School's 2004, 2005, 2006, 2007, and 2008 graduation ceremonies each featured opening and closing prayers (identified in the printed programs as "Invocation" and "Benediction") nearly always led by student representatives of the Christian World Order or the Fellowship of Christian Athletes. Attendees were asked to stand during the invocations and benedictions. *See* Ex. 1-2, pp. 6-21.

26. Santa Rosa Learning Academy's 2005, 2006, and 2007 graduation ceremonies each featured a prayer, which is identified in the printed programs as "Prayer." Thomas Frazier, a mathematics teacher at the Santa Rosa Learning Academy offered the prayers in 2006 and 2007. *See* Ex. 1-2, pp. 22-28.

27. Milton High School's 2004, 2005, 2006, 2007, and 2008 graduation ceremonies each featured an opening prayer (identified in the printed programs as the "Invocation") led by a student. Attendees were asked to stand during the invocations. *See* Ex. 1-2, pp. 29-41.

28. Navarre High School's 2005, 2006, 2007, and 2008 graduation ceremonies each featured an opening prayer (identified in the printed programs as the "Invocation") led by a student. *See* Ex. 1-2, pp. 42-59.

29. Pace High's 2004, 2005, 2007, and 2008 graduation ceremonies featured opening and closing prayers (identified in the printed programs as the "Invocation" and "Benediction") led by a different student each year. Attendees were asked to stand during the invocations and benedictions. *See, e.g.,* Ex. 1-2, pp. 60-72.

30. Santa Rosa Adult School's 2007 graduation ceremony featured an opening prayer offered by Morgan Miller, Chaplain for the Santa Rosa County Sheriff's Office, and a closing prayer offered by Raymond Rogers, Director of the School Board's Workforce Education Program. The prayers were identified in the printed program as an "Invocation" and "Benediction." *See* Ex. 1-2, pp. 73-75.

31. School officials provide the sound system through which prayers are delivered at school events, including at graduation, and select and make available the venue for the presentation of these religious messages.

32. School principals, including Defendant Lay, have final control over the content and design of school events and activities.

33. School officials have final control over whether to include various “invocations,” “benedictions,” and other religious messages at school events and activities.

34. School officials usually select who will offer the “invocations,” “benedictions,” and other religious messages at school events and activities.

35. Speakers at school events are often chosen based on their affiliation with a particular religion or student religious club.

36. Moreover, school officials often require student speakers to produce for advance review a copy of speeches, including “invocations,” that the students intend to offer at a school event. The school officials have authority to edit or demand that a student make changes to the proposed speech as well as to prohibit the student from making the speech altogether. School officials review the content of these proposed speeches during official working hours in the course of their employment.

37. For example, Defendant Lay has required students to produce a copy of a speech or prayer that the student intended to deliver at a school function so that Lay or his designee could review it and approve the speech or require edits prior to that event.

38. At times, school officials have exercised their control over the content and design of a program by soliciting students' opinions as to how to implement prayer: Pace High School officials have asked students (e.g., a "Senior Board") to decide (1) who should offer the "invocations," "benedictions," and other religious messages or (2) whether the program should even include an "invocation." But although school officials may ask students to propose initial ideas for a school event, such as graduation, Principal Lay and other school principals retain final control over the content and design of graduation ceremonies, including veto power over any student's suggestions.

39. By and large the graduation program at each high school does not differ significantly from year to year. Instead, the programs comports with school officials' consistent endorsement of their religion.

**B. <u>School-Sponsored Baccalaureate Services</u>**

40. In accordance with District-wide policy, practice, and custom, school officials sponsor religious baccalaureate services for graduating seniors. School officials make no effort to disassociate the School District from the baccalaureate ceremonies. Indeed, on information and belief,

school officials organize and design the services down to the last detail: They decide where to have the ceremony, which hymns will be sung, and which speakers will officiate. They produce the printed programs used for the services, encourage students to attend, and even dictate what students may wear. School officials complete these tasks as part of their course of employment. District funds have been and continue to be necessarily expended in producing many of the printed programs for baccalaureate services and through the salaries of school officials who plan and participate in the baccalaureates. Examples of baccalaureate services planned by school officials include those set forth *infra* in paragraphs 41 through 43.

41. On information and belief, Central High School and Jay High School officials planned and held official, school-sponsored baccalaureate services in 2005, 2006, 2007, and 2008, including designing and printing programs for the religious events. The printed graduation programs for both Central High School and Jay High School doubled as the programs for those schools' annual baccalaureate services, setting forth on one leaflet the school-designed and school-approved agendas for both the commencement and baccalaureate ceremonies. *See* Ex. 1-2, pp. 2-5, 10-21.

42. On information and belief, Milton High School officials planned and held an official, school-sponsored religious baccalaureate service in 2008, including, promoting the event to students and determining and enforcing the requirements for attendance. In the 2007-08 agenda planner issued to students by the school, the baccalaureate service is listed as a "Major School Event[]" alongside pep rallies, homecoming, prom, awards day, concerts and drama productions, and graduation. The planner also notes: "All graduates taking part in the baccalaureate or graduation ceremony must wear graduation dress requirements. Caps and gowns are to be worn at both baccalaureate and graduation. A dress code for these ceremonies will be given to seniors in advance. Failure to comply with this dress code will result in removal from the ceremonies. Milton High School strives to make these ceremonies dignified and memorable for the graduates and their families."

43. On information and belief, Pace High School officials were intimately involved in planning and holding Pace High's 2008 baccalaureate service. Pace High School Principal, Defendant Lay, presided over and led the religious service.

44. Plaintiffs would likely attend a secular graduation celebratory event sponsored by school officials, if the event did not promote school officials' religious beliefs.

**C. <u>School Events Held at Places of Worship</u>**

45. In accordance with District-wide policy, practice, and custom, District schools also hold certain school functions at places of worship even when suitable District facilities are available. Examples are set forth *infra* in paragraphs 46 through 52:

46. Bagdad Elementary's fifth-grade graduation program for 2004 was held at the First Assembly of God Church of Bagdad. Suitable facilities were available at Avalon Middle, which is approximately six miles away from Bagdad Elementary.

47. Central High School's Program for Recognition of Initiative and Distinction in Education ("PRIDE") 2006 ceremony was held at Immanuel Baptist Church in Pace. Suitable alternative facilities included Central High school, where Central High's 2007 Senior Awards Recognition was held.

48. Holley-Navarre Middle School's 2004, 2005, 2006, and 2007 Christmas concerts were held at Navarre United Methodist Church. Suitable alternative facilities included Navarre High school, where the 2008 Holley-Navarre Middle's spring concerts were held.

49. Milton High School's 2006 and 2008 football-cheerleader banquets were held at the First Baptist Church in Milton. Suitable alternative facilities included Milton High's auditorium, where its 2008 baccalaureate service was held.

50. Oriole Beach Elementary School's 2006 fifth-grade graduation was held at Gulf Breeze United Methodist Church and its 2007 fifth-grade graduation at First Baptist Church of Gulf Breeze. Suitable alternative facilities included Woodlawn Beach Middle School's cafeteria, where Woodlawn Beach Middle School's 2005 and 2006 Concerts were held.

51. Pace High School's 2008 Senior Academic Awards was held at Emmanuel Baptist Church. Suitable alternative facilities included Pace High School.

52. On information and belief, Pea Ridge Elementary School's 2005, 2006, 2007, and 2008 fifth-grade graduations were held at Pace

Assembly of God Church. The school's 2008 fifth-grade awards ceremony was held at Pace Assembly of God Church. Suitable alternative facilities included Pace High School.

### D. School Officials' Promotion of Personal Religious Beliefs and Proselytizing of Students

53. In accordance with District-wide policy, practice, and custom, school officials promote their personal religious beliefs, as well as proselytize students in class and during extracurricular activities.

54. Pace High faculty members attend and take part in meetings of school-sponsored, religious, student clubs. School officials' participation far exceeds the role of a chaperone or a nominal sponsor; they pray with and proselytize students. Examples are set forth *infra* in paragraphs 55 through 58.

55. Pace High teachers have attended and participated in meetings for "First Priority," an official Pace High School student club that meets once a week to talk and sing about God. Pace High math teacher and softball coach Dustin Gray preached to students about "instant reply" and "Judgment Day with the Lord" at a First Priority meeting during the 2005-2006 school year. Gray currently serves as the Interim Youth Director at

Immanuel Baptist Church. Pace High School teacher Dan Adams offered a bible reading or biblical interpretations at a First Priority meeting during the 2007-2008 school year. Adams is an assistant pastor at Harmony Ridge Baptist.

56. Pace High faculty commonly promote their own religious beliefs and proselytize students during class and extracurricular activities by extolling their faiths to students, identifying the church to which they belong, assigning students religiously oriented school work, and encouraging students to attend religious student clubs.

57. On information and belief, Pace High history teacher Clint Martin, who also coaches the girls' cross-country team, has preached to cross-country students and other students before school in the parking lot with the use of a bullhorn.

58. On information and belief, Pace High faculty and staff compose and give prayers or invite students or outside leaders to lead prayers before or during various sporting events (e.g., football games, basketball games, track meets) and other school activities (e.g. band, drama club, and other clubs).

## School Board's Liability

59. The School Board has actual knowledge of the school officials' persistent and pervasive practices promoting religion. As early as May 18, 2006, Defendants, through their attorney, were put on notice that Pace High School's 2005 graduation ceremony contained an impermissible prayer.

60. Later, by letter dated August 14, 2006, the School Board and Rogers were made aware that the Holley-Navarre Primary School's July 2006 dedication also contained an impermissible prayer.

61. Then, on November 29, 2006, Susan Watson, Director of the ACLU of Florida's Northwest Regional Office, raised concerns in a meeting with Defendant Rogers, Defendant Lay, and Paul Green, the School Board's legal counsel, that school officials were impermissibly using their official positions to promote their personal religious beliefs and proselytize students.

62. By letter on August 2, 2007, the School Board and Superintendent Rogers were made aware that the School District had a clear and persistent pattern of endorsing and favoring particular religious beliefs. The letter demanded that the School Board take remedial action to end these unconstitutional practices.

63. In the fall of 2007, in responding to an August 2007 public-records request, the School Board's attorney reviewed numerous printed programs evincing impermissible prayer at school events and other Establishment Clause violations.

64. During a meeting with ACLU staff on November 14, 2007, the School Board's attorney reviewed a number of instances in which school officials promoted their personal religious beliefs and proselytized students in class and at school events.

65. Several weeks later, the School Board's attorney, recognizing that school officials were in violation of the Establishment Clause, drafted a memorandum to advise which school officials' practices violated the Establishment Clause. However, the School Board failed to end the unconstitutional, policies, practices, and customs.

66. School Board members also had actual knowledge of these practices because they personally attended many of the school events at which prayer took place, including graduation ceremonies.

67. Moreover, given that these practices were so common, flagrant, persistent, and widespread throughout the School District, any responsible

School Board member would and should be aware of these customs and practices. Thus, the School Board has constructive knowledge of the policies, custom, and practice, alleged herein.

68. Between August 2, 2007, and early June 2008, the School Board met over a dozen times. However, it failed to address the School District's systemic violations of the Establishment Clause.

69. Plaintiffs' legal counsel demanded on June 11, 2008, that the School Board cease these constitutional violations, once again putting the School Board on notice of School District's unlawful policy, customs, and practices.

70. Though the School Board was placed on actual notice over two years ago and had constructive notice before then, it has failed to investigate these constitutional violations and refused to take action correcting the abridgement of students' Establishment Clause rights and preventing school officials from promoting their personal religious beliefs. In the face of concrete and undeniable practices, the School Board has instead stood by and remained deliberately indifferent to the constitutional violations.

71. The School Board has failed to proscribe by policy the clear and persistent pattern of endorsing particular religious beliefs at school events or to direct the superintendent to issue an administrative directive to cease such practices.

## **COUNT I: ESTABLISHMENT CLAUSE VIOLATION**
(42 U.S.C. §1983)

72. Plaintiffs reallege and incorporate by reference all of the preceding paragraphs in this Complaint.

73. Defendants have deprived, and are continuing to deprive, Plaintiffs of their rights under the Establishment Clause of the United States Constitution.

74. By Defendants' conduct alleged *supra*, which has the primary purpose and effect of promoting and advancing religion, Defendants violated, and are continuing to violate, Plaintiffs' rights under the Establishment Clause, contrary to the First and Fourteenth Amendments. The policies, practices, and customs established by the School Board, Defendant Rogers, Defendant Lay, and /or other school officials are the cause in fact of the constitutional violations.

75. Defendants' conduct also coercively exposes Plaintiffs and other students to religious exercises sponsored by school officials. Defendants have forced a decision on the Plaintiffs: Either forgo attending future school events, including graduation, or attend the events subject to prayers and religious ceremonies that are inconsistent with the Plaintiffs' consciences.

76. The history of graduation prayer at Pace High School makes it virtually certain that a prayer will, in fact, be given at the Plaintiffs' graduation, absent intervention by this Court, and that the Plaintiffs would suffer injury as a result of the Defendants' unconstitutional practices. The same is true for numerous other school events that are part of Plaintiffs' overall education and are being overshadowed by school officials' religious beliefs.

77. A reasonable, objective student, parent, or other observer aware of this conduct would conclude that the Defendants have endorsed and continue to endorse religion in the public schools of Santa Rosa County.

78. Unless restrained by this Court, Defendants will continue to subject Plaintiffs to coercive advancement of school officials' religious

beliefs. Plaintiffs have been and will continue to be irreparably harmed by the Defendants' denial of Plaintiffs' fundamental constitutional right to be free from government endorsement of particular religious beliefs.

79. Plaintiffs have no adequate remedy at law for the denial of their fundamental constitutional rights.

80. In depriving the Plaintiffs of these rights, Defendants acted under color of state law. This deprivation under color of state law is actionable under and may be redressed by 42 U.S.C. §1983.

## COUNT II: FLORIDA "NO AID" VIOLATION

81. Plaintiffs reallege and incorporate by reference all of the preceding paragraphs in this Complaint.

82. The "No-Aid" provision of the Florida Constitution (Art. I, Sec. 3) provides that "[n]o revenue of the state or any political subdivision or agency thereof shall ever be taken from the public treasury directly or indirectly in aid of any church, sect, or religious denomination or in aid of any sectarian institution."

83. The Defendants have used School District employee time to plan and participate in school prayer at various school functions, review student speeches, and plan and participate in baccalaureate services. On information and belief, the School District has incurred the cost of printing numerous graduation and baccalaureate programs.

84. If Defendants had not used state tax funds (or resources funded by the state) to support the District-wide prayer, those tax funds (or resources) could have been used to advance the secular education of School District students or the amount of taxes paid by Plaintiffs might have been returned or decreased.

85. The use of state funds to advance school officials' religious beliefs as described above will continue absent the issuance of an injunction by this Court.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiffs respectfully request the following relief:

A. An order declaring Defendants' policies, practices, and customs alleged above to be in violation of the Establishment Clause of the First Amendment to the U.S. Constitution and the "No Aid" provision of the Florida Constitution;

B. An order permanently enjoining Defendants and their officers, agents, affiliates, subsidiaries, servants, employees, successors, and all other persons or entities in active concert or privity or participation with them, from continuing their unlawful conduct at Pace High School and at all schools within the School District of Santa Rosa County, Florida, including prohibiting Defendants from:

1. Promoting, advancing, aiding, facilitating, endorsing, or causing religious prayers or devotionals during school-sponsored events;

2. Planning, organizing, financing, promoting, or otherwise sponsoring religious baccalaureate services at all schools within the School District, including at Pace High School;

3. Holding school-sponsored events at religious venues when alternative venues are reasonably available;

4. Permitting school officials to promote their personal religious beliefs and proselytize students in class or during school-sponsored events and activities; and

5. Otherwise unconstitutionally endorsing or coercing religion;

C. An order directing Defendants to providing a copy of the written injunction to all School District officials, staff, faculty, and other School District employees and agents;

D. An order permanently enjoining Defendants and its officers, agents, affiliates, subsidiaries, servants, employees, successors, and all other persons or entities in active concert or privity or participation with them, from taking retaliatory action against Plaintiffs for bringing this lawsuit;

E. Entry of judgment for each of the Plaintiffs against Defendant School Board for nominal damages of $1;

F. An award to Plaintiffs of reasonable attorneys' fees and costs incurred in connection with this action from the Defendants pursuant to 42 U.S.C. §1988;

G. An order retaining the Court's jurisdiction of this matter to enforce the terms of the Court's orders; and

H. Such further and different relief as is just and proper or that is necessary to make the Plaintiffs whole.

Dated: August 27, 2008.

**RESPECTFULLY SUBMITTED,**

Benjamin James Stevenson (Fla. Bar. No. 598909)
American Civil Liberties Union Found. of Florida
Post Office Box 12723
Pensacola, FL 32591-2723
bstevenson@aclufl.org
Tel: 850.429.9128 & 786.363.2738 (Direct)
Fax: 786.363.1985

Glenn M. Katon (Fla. Bar. No. 636894)
American Civil Liberties Union Found. of Florida
Post Office Box 18245
Tampa, FL 33679
gkaton@aclufl.org
Tel: 813.254.0925
Fax: 813.254.0926

Randall C. Marshall (Fla. Bar No.: 181765)
RMarshall@aclufl.org
Maria Kayanan (Fla. Bar No.: 305601)
MKayanan@aclufl.org
American Civil Liberties Union Found. of Florida
4500 Biscayne Blvd., Suite 340
Miami, Florida 33137
Tel: 786.363.2707
Fax: 786.363.1108

**(District Bar Membership Applications Pending, Per Local Rule 11.1(C)(2)))**
Daniel Mach (D.C. Bar No.: 461652)
dmach@aclu.org
Heather L. Weaver (D.C. Bar No.: 495582)
hweaver@aclu.org
ACLU Program on Freedom of Religion and Belief
915 15th Street, NW
Washington, DC 20005
Tel: 202.675.2330
Fax: 202.546.0738

*Counsel for Plaintiffs*